UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RENAE CRAIG, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | File No. 1:16-cv-08662 |
| DITECH FINANCIAL LLC f/k/a | ) | |
| GREEN TREE SERVICING, LLC, | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff RENAE CRAIG, by the undersigned attorneys, files this complaint against

DITECH FINANCIAL LLC f/k/a GREEN TREE SERVICING, LLC as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action for damages for breach of contract, and from Defendant's

violations of the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act

("ICFA"), and the Real Estate Settlement Procedures Act ("RESPA").

2.  All of the claims stated herein stem from Green Tree's wrongful servicing and illegal

debt collection activities related to Renae Craig's home mortgage loan.

### JURISDICTION AND VENUE

3.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692k (FDCPA),

12 U.S.C. § 2614 (RESPA), and 28 U.S.C. §§ 1331 & 1337, as the action arises under the laws

of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28

U.S.C. § 1367.

4.  Diversity jurisdiction is conferred upon this Court by 28 U.S.C. § 1332, as the matter in

controversy exceeds $75,000.00 and is between citizens of different states.

5.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Craig resides in this District and the events occurred in this District.

**PARTIES**

6.   Plaintiff RENAE CRAIG ("Craig") is a natural person who resides at 219 Louis Drive, Willow Springs IL 60480 ("subject property").

7.   Defendant DITECH FINANCIAL LLC f/k/a GREEN TREE SERVICING, LLC ("Green Tree") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Green Tree is in the business of mortgage loan servicing and debt collection across the country, including in the state of Illinois.

8.   Green Tree has been the servicer of the subject mortgage since April 1, 2013.

**FACTUAL BACKGROUND**

9.   On July 7, 2007, Craig obtained a home mortgage loan in the amount $180,600.00 from Franklin American Mortgage Company for the purchase of the subject property. The note carried a fixed interest rate of 7.5% and required monthly payments of $1,258.59 for principal and interest. With escrow, Craig owed ~$1,963.03 each month. *See* Exhibit A is a true copy of the note.

10. Thereafter, servicing of the subject loan transferred to Bank of America, N.A. ("BANA").

11. In or around January 2013, Craig missed a payment on subject loan. Craig continued to make most, but not all of her required payments.

12. On April 1, 2013, servicing rights to the loan were sold from BANA to Green Tree.

13. When the loan transferred, Craig had only missed a few payments and was eager to bring the loan current.

14. On May 20, 2013, when Craig called to make a payment, Green Tree refused to take her payment.

15. In June 2013, Craig called to make a payment and was told that she could not make a payment because she was approved for a loan modification.

16. In August 2013, Craig called about her loan modification and asked when she could resume payments. Green Tree advised Craig that her loan modification was being finalized and, once again, that she could not make a payment.

17. In September 2013, Green Tree advised Craig over the phone that she had been approved for a trial loan modification with a trial payment of $1,437.85. Greet Tree informed Craig that it would be mailing the modification paperwork to her. Craig did not receive any related modification paperwork in the mail.

18. In September 2013, Craig made her first trial payment to Green Tree in the amount of $1,437.85 over the phone using Green Tree's "SpeedPay" system.

19. In October 2013, Craig made her second trial payment to Green Tree in the amount of $1,437.85 using SpeedPay.

20. In November 2013, Craig made her third trial payment to Green Tree in the amount of $1,437.85 using SpeedPay.

21. In December 2013, Craig made her fourth trial modification payment to Green Tree in the amount of $1,437.85 using SpeedPay.

22. On December 3, 2013, Green Tree sent Craig a notice that she was approved for a permanent loan modification with a monthly payment of $1,437.85. *See* Exhibit B is a true copy of the December 3, 2013 letter. Craig was directed to accept the offer by January 2, 2014.

23. Craig accepted the permanent modification offer (hereinafter "first modification"), and

returned the executed paperwork to Green Tree by mail and by fax before January 2, 2014.

24. In January 2014, Craig made her first permanent modification payment to Green Tree in the amount of $1,437.85 using SpeedPay.

25. After successful completion of the trial payments and first permanent modification payment, Craig's loan was permanently modified and brought current.

26. However, when Craig called to make her second permanent modification payment, she was told by Green Tree that she could not make a payment because she was in foreclosure.

27. On February 3, 2014, Green Tree sent Craig a letter stating that she was denied a permanent loan modification because, "You have failed to provided [*sic*] the final executed modification documents within the required time frame." *See* Exhibit C is a true copy of the February 3, 2014 letter.

28. In response, Craig disputed the denial with Green Tree and asked for a breakdown of her loan modification payments that showed where the money was going.

29. On February 25, 2014, Green Tree referred the loan to foreclosure. *See* Exhibit D is a true copy of the February 25, 2014 letter.

30. On February 25, 2014, Green Tree refused to accept Craig's payment because her loan had been referred to foreclosure.

31. On March 28, 2014, Green Tree filed a mortgage foreclosure lawsuit against Craig in state court, captioned *Green Tree v. Craig, et al.*, 14 CH 5386 (Cook County) (hereafter "foreclosure").

32. Craig was served with a summons and foreclosure complaint at her place of employment.

33. Craig's coworkers witnessed Craig being served and found out that Craig was in foreclosure. Craig was humiliated.

34. Craig was also still confused by the foreclosure filing because she had a permanent loan modification.

35. On April 3, 2014, Green Tree sent Craig a letter stating, "[We] recently received your application for a loss mitigation options…you[r] application is incomplete." The letter asked Craig to complete another loan modification application. *See* Exhibit E is a true copy of the April 3, 2014 letter.

36. Craig was distraught and discouraged by the notice.

37. On May 1, 2014, Green Tree sent Craig a mortgage statement claiming that she owed $21,148.90 to bring the loan current. The statement did not recognize her permanent modification and claimed that she owed a regular monthly payment of $1,963.03 and a past due amount of $19,185.87. *See* Exhibit F is a true copy of the May 1, 2014 statement.

38. Craig attended foreclosure court and tried her best to defend the foreclosure pro se.

39.  The foreclosure judge directed Green Tree to work with Craig on a resolution.

40. Craig felt like she had no other choice to avoid foreclosure, but submit to Green Tree's insistence that she reapply for a new loan modification or face foreclosure.

41. Craig was forced to start the loan modification process over. Green Tree's representative sent Craig a list of required documents.

42. Craig submitted and resubmitted documents to Green Tree. In response, Green Tree repeatedly told Craig that it did not have documents that she had submitted multiple times.

43. Even though Craig worked the night shift, she stayed up multiple days to make sure that she submitted all of the documents to Green Tree that were requested.

44. During this time period, Craig's family life was falling apart. Her husband blamed her for their mortgage problems and Craig was forced to take time off work to go to court and gather,

prepare, submit, and repeatedly resubmit the same documents.

45. On October 20, 2014, after ten additional months of resubmitting the documents to Green Tree, Green Tree sent Craig a trial modification with monthly payments of $1,833.17 – four hundred dollars more than the first modification. *See* Exhibit G is a true copy of the October 20, 2014 letter.

46. The trial modification required three trial payments in the amount of $1,833.17 due November 1, 2014, December 1, 2014, and January 1, 2015. After successful completion of the trial payments, Craig's loan was to be permanently modified and brought current.

47. Also on October 20, 2014, the same day that it offered Craig the trial modification, Green Tree filed a motion for default judgment of foreclosure and sale of the subject property in the foreclosure case.

48. Craig made all of her trial payments, and signed and returned the loan modification to Green Tree on time. Craig fully complied with all terms and obligations in the agreement. She was entitled to a permanent loan modification.

49. On November 1, 2014, to make her loan modification payments, Craig set up an automatic withdrawal arrangement with Green Tree, whereby Green Tree would automatically withdraw $1,845.17 from Craig's bank account for each monthly payment.

50. On November 2, 2014, Green Tree sent Craig a notice acknowledging her automatic debit agreement.

51. Despite that the loan was permanently modified, on November 5, 2014, Green Tree moved for a default judgment of foreclosure.

52. On December 17, 2014, Green Tree entered a default judgment of foreclosure and sale of the subject property. *See* Exhibit H is a true copy of the notice of entry of default judgment.

53. On January 31, 2015, Green Tree approved Craig for a permanent loan modification.

54. On February 10, 2015, under duress and fearing the loss of her home, Craig signed the permanent modification (hereinafter "second modification") and returned it to Green Tree via facsimile and mailed the document to Green Tree three separate times. *See* Exhibit I is a true copy of the second modification.

55. Craig proceeded to make every required payment under the second modification.

56. However, Green Tree continued to send Craig letters and statements that did not recognize the second modification and demanded over $30,000.00.

57. As a result, in or around late February 2015, Craig sent a RESPA Request for Information ("RFI") and Notice of Error ("NOE") disputing Green Tree's refusal to recognize her second loan modification, describing the emotional toll that the process was taking on her and her family, and requesting information about her loan. Craig attached her signed loan modification. *See* Exhibit J is a true copy of the RFI and NOE.

58. On February 24, 2015, Green Tree's written response stated, "We apologize that the service received was not to your satisfaction." The letter stated that that account was "currently under final review for a modification." The letter did not include a breakdown of payments. *See* Exhibit K is a true copy of the February 24, 2015 letter.

59. Green Tree did not recognize the second modification in response to the RFI and NOE. *See* Exhibit K.

60. Instead, Green Tree sent Craig statements seeking to collect a payment that did not recognize Craig's second modification.

61. Green Tree sent statements that did not recognize the second loan modification through at least March 2016.

**Damages**

62. Craig has suffered damages from Green Tree's conduct, including:

  i.  Emotional distress, stress, anxiety, and pain and suffering;

  ii.  Loss of time and resources to dispute the wrongful servicing, make oral and written disputes, pay postage, defend the foreclosure, and enforce the terms of the first and second modification;

  iii.  Loss of payments made to loan modifications that were not honored;

  iv.  Interest, default charges, and foreclosure costs and fees that have been wrongfully added to Craig's loan balance.

63. Further, as a result of taking time off work to apply for the loan modification, submit documents, and attend foreclosure court, Craig was ineligible for a promotion at work.

64. Craig's migraines also became worse from the stress of her mortgage situation.

65. The migraines, coupled with the humiliation of being served with the foreclosure summons at work, affected her Craig's satisfaction and performance.

66. Green Tree's actions were the proximate cause of damages to Craig that include those set forth above, the misapplication of payments, and Craig living in a state of "default" for over two years while she tried to enforce her loan modifications with Green Tree and avoid foreclosure.

## COUNT I – BREACH OF CONTRACT

67. Craig repeats and realleges paragraphs 1 through 66 as though fully set forth herein.

68. Craig had a valid and enforceable first and second modification contract (hereinafter collectively referred to as "loan modifications") with Green Tree as the servicer of the subject loan of the loan. *See* Exhibits A, B and I.

69. Craig fully performed her duties under the loan modifications by tendering all monthly payments and by complying with all other terms of the contracts.

70. Green Tree breached the loan modifications by:

  i. Misapplying Craig's principal, interest, and escrow payments;

  ii. Rejecting Craig's payments;

  iii. Continuing to prosecute the foreclosure and entering a default judgment of foreclosure after Craig's loan had been permanently modified;

  iv. Treating the loan as in "default" when Craig was contractually current;

  v. Failing to honor the existence of the loan modifications;

  vi. Assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modifications;

  vii. Failing to provide Craig with accurate account information or accurately respond to Craig's correspondence and other disputes; and

  viii. Failing to conduct its affairs in good faith.

71. Craig suffered damages as set forth in paragraphs 62 through 66 that were proximately caused by the breach of contract.

WHEREFORE, Plaintiff RENAE CRAIG requests that this Honorable Court:

  a. find that Green Tree materially breached the mortgage contract;

  b. award Craig her actual damages to be proven at trial; and

  c. award Craig any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

72. Craig restates and realleges paragraphs 1 through 66 herein.

73. Craig is a consumer under 15 U.S.C. § 1692a(3), as the subject loan was extended on Craig's primary residence and was strictly for personal, family, and household purposes.

74. Green Tree qualifies as a "debt collector" under § 1692a(6) because (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, (c) it regularly collects debts owed to another party, and (d) it acquired the subject loan after it was in default.

9

**a.** **Violation of §§ 1692e, e(2), e(5), & e(10) and §§ 1692f & f(1)**

75. In its attempts to collect a debt from Craig, Green Tree employed false, deceptive, misleading, unfair, and unconscionable conduct by:

    i.   Misrepresenting the character, amount, and legal status of the subject loan;

    ii.   Attempting to collect amounts in statements sent to Craig in contravention of loan modifications when collection of those amounts was not authorized by contract or law; and

    iii.   Refusing to accurately communicate with Craig or respond to her inquiries.

76. Craig suffered damages as set forth in paragraphs 62 through 66 that were proximately caused by Green Tree's conduct in violation of the FDCPA.

WHEREFORE, Plaintiff RENAE CRAIG requests that this Honorable Court:

    a.   enter judgment in her favor and against Green Tree;

    b.   award Craig statutory and actual damages in an amount determined at trial; and

    c.   award Craig costs and reasonable attorney fees under 15 U.S.C. §1692k.

## COUNT III – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

77. Craig restates and realleges paragraphs 1 through 66 as if stated herein.

78. Green Tree violated ICFA by employing unfair and deceptive acts and practices when dealing with Craig. Craig is a "consumer" and "person." *See* 810 ILCS 505/1, 505/2.

79. The acts and practices occurred in the course of conduct involving trade or commerce.

80. Green Tree made outright unfair and deceptive representations to Craig as to the status the loan modifications, its right to foreclose, how Craig *should* act, and its actual treatment of her account internally compared to its representations to Craig.

81. It was unfair and deceptive for Green Tree to:

    i.   Ignore the loan modifications and Craig's true account history;

    ii.   Falsely claim that it could file foreclosure and enter a foreclosure judgment, when no such right existed;

    iii.   Send Craig notices with false and misleading information, including that Craig owed "default" and foreclosure related fees and costs after the loan modifications; and

    iv.   Misrepresent "default" related fees and escrow charges on a loan that was not in default.

82. It was unfair for Green Tree to refuse to provide any explanation or basis for its conduct over the course of over two years or in response to Craig's disputes.

83. Craig incorporates herein the unfair and deceptive conduct in paragraph 81 above.

### a.  <u>Public Policy, Immoral Actions, and Substantial Injury to Consumers</u>

84. Green Tree's conduct offends public policy as it demonstrates an industry-wide practice of charging illegal fees and escrow charges to a borrower in order to make a profit, forcing borrowers to make loan modification payments without properly crediting the payments, misrepresenting material facts, sending conflicting correspondences, falsely threatening foreclosure sales, with the intention of ultimately obtaining a default judgment of foreclosure.

85. Green Tree's actions cause substantial injury to consumers generally because:

    i.   Consumers reasonably expect that banks and loan servicers will communicate with them truthfully and accurately regarding their account;

    ii.   Consumers reasonably expect that banks and loan servicers will not make false representations or induce payments on false pretenses;

    iii.   Consumers reasonably expect that, if there is a dispute, banks and loan servicers will make honest efforts to resolve the dispute expeditiously, instead of misrepresenting facts or not responding altogether; and

    iv.   Consumers reasonably expect that large corporations will dismiss a foreclosure in response to binding loan modifications.

86. Additionally, consumers do not expect to be blindsided by a foreclosure filing and a default judgment of foreclosure when they are offered or making payments on a loan modification.

87. Craig could not avoid these immoral undertakings because Green Tree would not accurately communicate with her. Craig's inquiries and disputes were never investigated nor

11

adequately answered; the lack of clarity resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of her account.

88. When taken as a whole over the course of two years, Green Tree's conduct was so unethical and unending that Craig had no choice but to submit.

89. Craig had no actual control over (a) her loan modifications and payments; (b) whether Green Tree would attempt to foreclose; (c) the arbitrary collection attempts; (d) the assessment of default fees and costs: (e) how costs and fees were assessed or applied; (f) how Green Tree truly treated the loan internally; and (g) whether what Green Tree represented was truthful.

90. This conduct is part of a pattern and practice of behavior in which Green Tree routinely engages as part of its business model. It is Green Tree's normal business practice to disregard agreements and state and federal laws and regulations, and then misstate the nature of outstanding "debts" and amounts "owed" to consumers for its own pecuniary gain.

**b.   Intent, Reliance, and Punitive Damages**

91. Green Tree's conduct was willful, malicious, and arbitrary. It was designed to place Craig's account in a perpetual state of "default," while taking advantage of an emotionally and financially vulnerable borrower.

92. Green Tree's overall scheme was designed and intended to (a) trick Craig into making timely payments on the loan modifications while continuing to hold Craig in "default;" and (b) discourage Craig from continuing to fight for her home and eventually "give up."

93. Green Tree's communications were intentionally confusing, misleading, and designed to keep Craig in a state of confusion while profiting from her payments, and then ultimately obtain a default judgment.

94. Craig suffered damages as set forth in paragraphs 62 through 66 that were proximately caused by Green Tree's conduct in violation of the ICFA.

95. An award of punitive damages is appropriate because Green Tree's conduct was outrageous, willful, and wanton, and showed a reckless disregard for the rights of Craig over the course of a year. Additionally, when Craig objected, Green Tree attempted to silence Craig by falsely seeking a foreclosure and entering a default judgment.

WHEREFORE, Plaintiff RENAE CRAIG requests that this Honorable Court:

   a. enter judgment in Craig's favor and against Green Tree;
   b. award Craig actual and punitive damages in an amount to be determined at trial;
   c. award Craig costs and reasonable attorney fees under 815 ILCS 505/10a(c); and
   d. award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

96. Craig repeats and realleges paragraphs 1 through 66 as though fully set forth herein.

97. The subject loan is a "federally related mortgage" under RESPA and 12 C.F.R. 1024.2.

98. Green Tree qualifies as a "servicer" under RESPA § 2605(i)(2) and 12 C.F.R. 1024.2.

**a. Violation of §§ 2605(e)(2) & (k) and 12 C.F.R. 1024.35(e)**

99. In February 2015, Craig sent an RFI and NOE to Green Tree. *See* Exhibit J.

100. Green Tree did not respond to Craig's RFI and NOE in a manner required by RESPA.

101. RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3) require a loan servicer, within 30 days of receipt of an RFI or NOE, to (i) make corrections to the account and provide the borrower a written notice; or (ii) conduct an investigation and provide the borrower a written explanation as to why the servicer believes its servicing is correct; or (iii) conduct an investigation and provide the borrower a written explanation as to why the requested information is not available.

102.  With respect to the RFI and NOE sent by Craig to Green Tree in February 2015, Green Tree (a) did not make corrections to the account, (b) did not conduct a reasonable investigation, and (c) did not respond to Craig in one of the three methods allowed under RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3).  *See* Exhibit K.

103.  Green Tree's failure to comply with RESPA is part of a pattern of practice of non-compliance with the provisions of RESPA.

### b.  Violation of §§ 2605(k)(e) and 12 C.F.R. 1024.41

104.  Effective January 10, 2014, RESPA was amended to prohibit a servicer from "dual tracking," or simultaneously seeking foreclosure of a property while a borrower is being evaluated for a loan modification or making payments on a loan modification.

105.  Green Tree engaged in impermissible dual tracking on at least March 28, 2014 (filed foreclosure), October 20, 2014 (moved for default judgment), and December 17, 2014 (entered a default judgment) while Craig was making trial modification payments and payments under her second modification.

106.  Craig suffered damages as set forth in paragraphs 62 through 66 that were proximately caused by Green Tree's conduct in violation of the ICFA.

WHEREFORE, Plaintiff RENAE CRAIG requests that this Honorable Court:

a.  grant judgment in Craig's favor and against Green Tree;

b.  award Craig actual and additional damages pursuant to RESPA § 2605(f);

c.  award Craig attorney's fees and costs pursuant to RESPA § 2605(f); and

d.  award any other relief this Honorable Court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully Submitted,

By: ___/s/ Mara A. Baltabols_____
Mara A. Baltabols (#6299033)

14

Sulaiman Law Group
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181